GEORGE ALBERT POWERS *vs.* MAINE CENTRAL RAILROAD COMPANY.

Penobscot. Opinion December 6, 1915.

*Chartered Duties. Damages. Fellow Servants. Negligence. Notice.*
*Orders. Personal Injuries. Warning.*

The defendant hired its train and crew to Hines & Son to do certain work for them. The crew were to control the mechanical operations of the train; Hines & Son were to direct its movements.

*Held:*

1. Upon the question as to what duty devolved upon the defendant, it may be regarded as a fair interpretation to hold that it was the duty of the crew not to give, but to obey orders; to act according to orders.
2. That they, accordingly, had a right to assume, and to act upon the assumption, that the person whose duty it was to give the orders to move the

train had exercised due care in preparation for its execution and that it was not negligence to obey, unless by the exercise of due care, the orders were, or ought to have been, discovered to be improper or dangerous to perform.

3. Whether a railroad can divest itself of its chartered responsibility is found in the inquiry, whether the negligence complained of was in the improper mechanical operation of the train in executing a proper order, or in the proper mechanical operation of the train in executing an improper order; in other words, whether the careless operation of the train was the proximate cause of the injury, or the execution with due care of a careless order was the proximate cause of the accident and injury. If the latter, the rule does not apply, as the railroad, under the contract, cannot be declared negligent, unless it is held to be an insurer.

On exceptions by the plaintiff, with stipulation that if plaintiff's exceptions are sustained, the Law Court shall assess damages and order final judgment. Judgment for plaintiff for $890.00.

This is an action on the case, brought by the plaintiff against the Maine Central Railroad Company to recover damages for personal injuries received in consequence of the negligence of the defendant company. Plea, general issue. At the close of the evidence, the presiding Justice directed a verdict for the defendant. To this direction of a verdict, the plaintiff excepted.

The case is stated in the opinion.

*Morse & Cook, and W. H. Powell,* for plaintiff.

*Fellows & Fellows,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

SPEAR, J. This is an action to recover for personal injuries. After the testimony was all in the presiding Justice ordered a verdict for the defendant with the stipulation, if the exceptions taken to the order were sustained, that the Law Court should assess the damages. The only question, therefore, is whether the case should have been submitted to the jury. We think it should.

The plaintiff at the time of his injury was an employee of T. J. Hines & Son, who were contractors in constructing the eastern span of the Old Town and Milford bridge across the Penobscot river. The Maine Central Railroad contracted with T. J. Hines & Son at a certain sum per night, of not over three hours, to furnish a freight

train to unload, upon the Maine line, gravel and crushed rock, to be used in the construction of the bridge. The railroad company was to furnish the train, and crew to operate it, for a stated time and sum, but beyond this had nothing whatever to do with the use or control of the train. Its movements were not under the direction of the railroad company. It was in the employ, and working under the orders, of Hines & Son. The plaintiff was injured by being thrown between the cars, by the impact caused by moving that part of the train, to which the engine was attached, against some detached cars standing upon the track, upon one of which the plaintiff was attempting to mount for the purpose of unloading it. In causing the accident the plaintiff contends the defendant company was negligent in two ways: First, by carelessly running the engine, and cars to which it was attached, against the other cars in such a "dangerous and violent manner as to throw the plaintiff upon the track." Second, by neglecting to give any notice or warning to the plaintiff of their purpose to shackle to the cars which were being unloaded. The defendant contends, under the contract of hire, that the train crew while doing this particular work were the employees of Hines & Son, for whose conduct the railroad was in no way responsible, either for negligence in operating the train or in executing orders, if acting according to directions. In other words, that the train crew were fellow servants, in the execution of this work, with the employees of Hines & Son. The plaintiff's answer is that the railroad company, under its charter and the laws of the State, could not by contract divest itself of full responsibility for the operation of its train.

The fellow servant rule, as will be seen, does not apply. Nor do we think the doctrine that the railroad is responsible for properly executing the orders of Hines & Son, without any negligence on its own part, can be applied under the rule, that a railroad cannot divest itself of duties imposed by its charter and the laws of the State. The application of this rule depends upon the inquiry, whether the contract, which the railroad made, was in violation of its charter or the laws of the State. If it was, the rule applies in full; if not, it does not apply in full. The contract, resolved into its parts, presents the following elements: It hired its train and crew to Hines & Son to do certain work for them. For due care for its mechanical

operation it did not seek to relieve itself by the terms of the contract. And under this contract it is proper to here note the clear distinction between the implied duty of the train crew, in controlling the mechanical operation of the train, and its express duty in moving the train in obedience to the orders of Hines & Son. The crew were to control the mechanical operation of the train. Hines & Son were to direct its movements. The engineer, conductor and crew were responsible for the mechanical operation of the train; for how to run it. Hines & Son were responsible for all orders, when and where to run it. For these directions the crew had nothing to say; Hines & Son had all to say. In this contract we discover nothing partaking of illegality.

Upon the question as to what duty devolved upon the defendant to meet the measure of due care, imposed upon it under its contract, it may be regarded as a fair interpretation to hold, that it was the duty of the crew not to give, but to obey orders; to act according to orders; that they, accordingly, had a right to assume, and to act upon the assumption, that the person whose duty it was to give the order to move the train had exercised due care, in preparation for its execution, and that it was not negligence to obey, unless, by the exercise of due care, the orders were, or ought to have been, discovered to be improper or dangerous to perform. There was no other way in which they could be directed to move the cars from place to place to deposit the gravel and rock. The crew had no means of knowing except from directions.

Accordingly, the differentiation between this case and the line of cases in which the plaintiff invokes the rule, that a railroad cannot divest itself of its chartered responsibility, is found in the inquiry, whether the negligence complained of was in the improper mechanical operation of the train, in executing a proper order, or in the proper mechanical operation of the train, in executing an improper order; in other words, whether the careless operation of the train was the proximate cause, or the execution with due care, of a careless order, was the proximate cause, of the accident and injury. If the latter, then the rule does not apply, as the railroad, under the contract, cannot be declared to be negligent, unless it is held to be an insurer.

Under this interpretation of the law three questions of fact are involved. (1) Was the railroad company negligent in the mechanical operation of its train in the execution of the order to move the train? (2) Was it negligent in a failure to give proper warning that it was about to shackle onto the cars that were being unloaded? (3) Was the plaintiff guilty of contributory negligence? Should the first question have been submitted to the jury? If there was any evidence upon which the jury would be authorized to base a verdict it should have been submitted. We think the report clearly discloses such evidence. Under the rule of law above stated, the railroad company was responsible for due care in the operation of its train, in the execution of the directions under which it worked. It, therefore, follows that the fellow-servant rule cannot be applied to a negligent management of the train, in executing the order to shackle to the other cars. Under this phase of the case the plaintiff avers that the defendant did improperly operate its train, by impelling it with such force against the detached cars, upon one of which the plaintiff was about to go to work, as to be chargeable with negligence in so doing. The plaintiff was entitled to the judgment of the jury upon this issue. His testimony, if true, shows that, while he was in the act of mounting one of the detached cars, he was thrown between them by the severity of the shock, caused by the force with which the moving train struck against them. Another witness said in answer to the question, what effect the impact had upon him, "I tumbled down. It knocked me down." Another witness testified in answer to the inquiry, what caused the injury, "Well, the engine struck the cars and knocked his feet out from under him." There is other testimony of a similar nature. This testimony, coupled with the further testimony of the plaintiff and other witnesses that he had no warning,—whether true or not it is not for us to say,—was sufficient to require the facts to be submitted to the judgment of the jury whether the crew were sufficiently prudent in running the train back with the force which the evidence discloses. In view of this conclusion, it becomes unnecessary to consider the question, whether the defendant did or did not ring the bell, or otherwise give notice. The third question involving the contributory negligence of the plaintiff, under the report of the evidence, was clearly a question of fact for the jury and cannot be

decided against him as a matter of law, as the evidence would sustain a verdict if found in his favor. Under the stipulation in ordering the verdict, the only remaining question is the assessment of damages.

Upon this question we deem it our duty to rely substantially upon the testimony of the plaintiff's attending physician touching the nature and severity of the injuries of which the plaintiff complains. His description of what he found is stated in his own language as follows: "He complained of pain about his side, shoulder and arm; more particularly his arm at that time. He told me about the fall, and I examined him for his injuries. The first thing I found was a fracture of the ulna,—about there as I remember it; it was in the lower third somewhere about here; and he made complaint about soreness and lameness about his shoulder. I stripped him and examined his shoulder to see if there was any dislocation or fracture there; I didn't find any. I didn't examine the chest very carefully until a day or two after that he complained of a good deal of soreness about his chest. I reduced the fracture and put a suitable splint on it, and told him to carry his arm in the sling at his side, in the usual way. That is about all there was." A few days later upon complaint of pain in breathing, the physician made a further examination of the plaintiff upon which he thought he discovered symptoms of a fracture of a rib under the deep muscles of the back. While the proof is not conclusive of this injury, yet, in considering the evidence in the light of a jury, we think we should assume that such a fracture was sustained. Upon cross-examination, Dr. Rowe, who, by the way, seems to have been a perfectly fair witness, says that in treating the fracture of the arm he got a perfect union of the ulna and that the fracture of the rib had fully recovered so far as he was able to judge; that the arm remained in a sling or splint about four weeks. He also said, at the time of the trial, that there was nothing to indicate that the plaintiff had not fully recovered, except symptoms that were entirely subjective; that there were no objective symptoms. And in answer to the question, "There is nothing to be seen from your examination why this man is not fully recovered," replied, "No, sir." Dr. Daniel A. Robinson of Bangor, who made an examinaion of the plaintiff a short time before the trial, said the only objective symptom he discovered was that he

found somewhere about the lower third of the arm,—this side—the feeling as if the bone had been injured; and further, that both arms were of the same size and the motion so far as he could tell was all perfect, but that he complained of these two fingers; being lack of strength and being cold.  Upon cross-examination in answer to the inquiry whether the injury of the ulna nerve would affect the fingers complained of, he answered: "I have never seen it do that from these injuries."  The plaintiff says that he was unable to do any kind of work from the 15th day of October, 1913, when he was injured, until the 6th or 8th of January following, when he went into the woods in the employment of scaling lumber in which occupation he continued until April 8th.  At the time he was injured he was earning $3.00 a day.  He was therefore entitled to recover, for his loss of time during this period, for seventy-five days at $3.00 per day, amounting to $225.00.  From January 8th to April 8th he says his loss was about $10.00 per month, for which he should have $30.00.  From April 8th to the first of June the plaintiff, whose business during this period was river driving, says that he tried but was unable to work, on account of his injured arm, and that the wages for this employment ranged from $2.50 to $3.00 a day.  It is difficult to say just what the plaintiff should be entitled to for this loss of time as it was his duty to find employment, even at a less price per day, during this period if he was able to do so.  We think, however, it may be fair to allow him the minimum price of $2.50 per day, for forty-six days, which amounts to $115.00.  After this the evidence fairly shows that he was able to engage in any of his usual occupations which might be offered him.  He should be allowed $25.00, the amount paid Dr. Rowe for medical services, and a further sum of $25.00 for incidental expenses.  He is also entitled to recover for the pain and suffering which he underwent and which he will undergo if any in the future.  We think for this he is entitled to recover $500.  The aggregate of these sums totals eight hundred and ninety dollars, the amount which we think the plaintiff is entitled to recover.

*Judgment for plaintiff for $890.00.*